

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 29, 2020**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| WEST HOUSTON MEMORY CARE , LLC[1] | § | Case No. 19-31485-sgj-11 |
| | § | |
| Debtor. | § | |

**ORDER APPROVING EXPEDITED SALE OF ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, AND ENCUMBRANCES; APPROVING THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS; AUTHORIZING DEBTOR TO
CONSUMMATE TRANSACTION; AND GRANTING CERTAIN OTHER RELIEF**
[Relates to Dkt. No. 34]

Having considered the *Expedited Motion for Orders (A) Authorizing Sale of Assets Free
and Clear of All Liens, Claims, and Encumbrances, Subject to Higher and Better Offers, (B)
Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; (C)
Authorizing the Debtor to Consummate the Transaction; and (D) Granting Certain Other Relief
as more fully described therein* [Dkt. No. 34] (the "Motion"),[2] and the Court having conducted a

---

[1] Last four EIN 2760.

[2] Capitalized terms used but not defined herein shall have the means ascribed in them in the Motion.

ORDER APPROVING SALE OF ASSETS AND APPROVING ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS – Page 1

hearing on December 22, 2020 (the "Sale Hearing"), at which time all parties in interest were offered an opportunity to be heard with respect to the Proposed Sale of the Sale Assets, and the Court having considered: (i) the Motion and any objections thereto; (ii) the Proposed Sale of the Sale Assets by Debtor to McFarlin GP Invest, LP ("McFarlin") (or its assigns, designees, or successors); (iii) the arguments of counsel made, and evidence adduced, related thereto at the Sale Hearing; (iv) the full record in the Debtor's Chapter 11 Case and those of its affiliates; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest; it is hereby

FOUND, CONCLUDED, AND DETERMINED THAT:[3]

A.    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this Chapter 11 Case pursuant to Bankruptcy Rule 9014, and supplement all findings of fact and conclusions of law announced by the Court on the record at the Sale Hearing to the extent not inconsistent herewith.

B.    The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334; venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2); and the statutory bases for relief requested in the Motion are Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 4001, 6004, 6006, and 9014.

C.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under

---

[3] To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that time is of the essence in effectuating the APA and that there is no just reason for delay in the implementation of this Order. Accordingly, cause exists to modify the stay contemplated by Bankruptcy Rules 4001(a) and 6004(h) and permit the immediate effectiveness of this Order.

D.     The Sale Assets constitute property of Debtor's estate and title thereto is vested in Debtor's estate within the meaning of Bankruptcy Code section 541(a).

E.     On May 2, 2019 (the "Petition Date"), the Debtor and several of its affiliates commenced the above-captioned Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

F.     The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

G.     No trustee or examiner has been appointed in the Debtor's Chapter 11 Case, and no committee of unsecured creditors has been appointed.

H.     On May 21, 2019, the United States Trustee appointed Susan N. Goodman as the Patient Care Ombudsman ("PCO") for the Debtor.

I.     Good, sufficient, and appropriate notice, under the circumstances, of the Motion and the Sale Hearing was provided to each party entitled to such notice, including, as applicable: (i) all entities known to have expressed a bona fide interest in a transaction with respect to the Sale Assets since the Petition Date; (ii) all entities known to have asserted any lien, claim or encumbrance in or upon any of the Sale Assets; (iii) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief

requested by the Motion; (iv) the U.S. Trustee; (v) the PCO; (vi) the Internal Revenue Service; (vii) and all persons and entities that have requested service of filings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002. All parties in interest have been provided a reasonable opportunity to object or be heard regarding the relief requested in the Motion, and no other or further notice of the Motion or Sale Hearing is, or shall be, required.

J.     The Debtor and its professionals marketed the Sale Assets prior to and following the Petition Date.  Based on the record of these proceedings, creditors and other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to make an offer to purchase the Sale Assets.

K.     The disclosures the Debtor made in the Motion and at the Sale Hearing concerning the Proposed Sale were good, complete and adequate. The APA and the Proposed Sale contemplated thereby represent a fair and reasonable offer to purchase the Sale Assets under the circumstances of this Chapter 11 Case and present the best opportunity to realize the value of the Sale Assets on a going-concern basis and avoid decline and devaluation of the Sale Assets. No other entity or group of entities has presented a higher and better offer to Debtor to purchase the Sale Assets, and no other transaction would yield as favorable an economic result. The APA and the Proposed Sale must be approved and the Closing must occur promptly to preserve the value of the Debtor's assets.

L.     The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, the Debtor's determination to enter into the APA constitutes a valid and sound exercise of the Debtor's business judgment, and the Proposed Sale should be approved.

M.    The consideration McFarlin is providing pursuant to the APA, including but not limited to the Purchase Price: (i) was negotiated at arm's length; (ii) is fair and adequate; and (iii) constitutes reasonably equivalent value and fair consideration for the Sale Assets under the Bankruptcy Code and applicable non-bankruptcy law.

N.    McFarlin is purchasing the Sale Assets in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m) and is not an "insider" of any Debtor (as defined under Bankruptcy Code section 101(31)), and, therefore, is entitled to the full protections of that provision, and otherwise has proceeded in good faith in all respects in connection with this Chapter 11 Case in that: (1) McFarlin recognized that the Debtor was free to deal with any other party interested in acquiring the Sale Assets; (2) all payments to be made by McFarlin and other agreements or arrangements entered into by McFarlin in connection with the Proposed Sale have been disclosed; (3) McFarlin has not violated Bankruptcy Code section 363(n) by any action or inaction; and (4) the negotiation and execution of the APA, including the Proposed Sale contemplated thereby, was completed by the Debtor and McFarlin in a diligent, non-collusive, fair, arms' length, and good-faith manner. Specifically, McFarlin has not acted in a collusive manner with any person, including any other potential buyer, nor was it controlled by any agreement among bidders. McFarlin's prospective performance and payment of amounts owing under the APA are in good faith and for valid business purposes and uses.

O.    The APA and the transactions contemplated thereby cannot be avoided under section Bankruptcy Code 363(n). The Debtor and McFarlin have not engaged in any conduct that would cause or permit the APA or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section Bankruptcy Code 363(n).

Moreover, neither the Debtor nor McFarlin has entered into the APA or is consummating the Proposed Sale with any fraudulent or otherwise improper purpose.

P. By consummating the Proposed Sale, McFarlin is not a mere continuation of the Debtor or its estate, and there is no continuity between McFarlin and the Debtor. McFarlin is not holding itself out to the public as a continuation of the Debtor. McFarlin is not a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity, and the Proposed Sale does not amount to a consolidation, merger, or de facto merger of McFarlin and the Debtor. Except as provided in the APA, neither McFarlin, nor any of its affiliates, assigns, designees, or successors shall assume any obligation or liability of the Debtor, its estate, or of the Manager. Neither the disposition of the Sale Assets pursuant to the APA nor entry into the APA will subject McFarlin to any liability for claims, obligations, or Interests or Claims (as defined below) asserted against the Debtor or the Debtor's interests in such Sale Assets by reason of such transfer under any laws, including without limitation any bulk-transfer laws or any theory of successor continuity or similar theories.

Q. The Proposed Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtor. The Proposed Sale does not constitute a *sub rosa* plan.

R. The Debtor, acting by and through its existing agents, representatives, and officers, has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and the Debtor requires no further consents or approvals for the Debtor to consummate the Proposed Sale contemplated by the APA, except as otherwise set forth in the APA.

S.    The transfer of each of the Sale Assets to McFarlin will be, subject to the consummation of the Closing, a legal, valid, and effective transfer of such assets, and vests or will vest McFarlin with all right, title, and interest of Debtor to the Sale Assets free and clear of all Interests or Claims (as defined below) accruing, arising or relating thereto any time prior to the consummation of the Closing, unless otherwise assumed pursuant to the APA, with such Interests or Claims to attach to the proceeds of the Proposed Sale of the Sale Assets with the same validity and priority as such Interests or Claims applied against the Sale Assets immediately prior to the consummation of the Closing, except as otherwise specifically provided APA.

T.    Debtor may sell the Sale Assets pursuant to the APA free and clear of all Interests or Claims against the Sale Assets (unless otherwise assumed in the APA) because, in each case, the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Interests or Claims against the Sale Assets who did not object, or who withdrew their objections, to the Proposed Sale or the Motion are deemed to have consented thereto pursuant to Bankruptcy Code section 363(f)(2). Those holders of such Interests or Claims against the Sale Assets who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Interests or Claims against the Sale Assets, if any, in each instance against Debtor, its estate, or any of the Sale Assets, attach to the proceeds of the Proposed Sale, in the same order of priority, with the same validity, force, and effect that such creditor had immediately prior to the Closing of the Proposed Sale, subject to any claims and defenses that Debtor may possess with respect thereto.

U.    If the Proposed Sale were not free and clear of all Interests or Claims against the Sale Assets (except as otherwise assumed in the APA), or if McFarlin would, or in the future

could, be liable for any of the Interests or Claims against the Sale Assets (except as otherwise assumed in the APA), McFarlin would not have submitted the APA and would not consummate the Proposed Sale, thus adversely affecting the Debtor, its estate, the residents the Debtor serves, and its creditors. Therefore, approval of the APA and the consummation of the Proposed Sale free and clear of all Interests or Claims (subject to the terms and conditions of the APA and this Order) is appropriate pursuant to Bankruptcy Code section 363(f) and is in the best interests of the Debtor's estate, its creditors and other parties in interest.

V.     The Debtor has demonstrated compelling circumstances and good and sufficient cause exists for (i) considering the Motion on an expedited basis; and (ii) granting the relief in the Motion.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1.     The Motion is GRANTED as set forth herein.

2.     Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.     Notice of the Motion, the Sale Hearing, and the Proposed Sale was fair, appropriate, and equitable under the circumstances and complied in all respects with Bankruptcy Code section 102(1) and Bankruptcy Rules 2002, 6004, and 6006.

4.     Pursuant to Bankruptcy Code section 363(b), the APA is approved, and each of the Debtor and McFarlin, acting by and through its existing agents, representatives and officers, is authorized, empowered, and directed to take any and all actions necessary or appropriate to: (a) consummate the Proposed Sale pursuant to and in accordance with the terms and conditions of

the APA; (b) consummate the Proposed Sale as contemplated in the APA and this Order; (c) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of the APA; and (d) execute and deliver, perform under, consummate, and implement the APA, and all additional instruments and documents, that may be reasonably necessary or desirable to implement the APA and the Proposed Sale or any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA, and such other ancillary documents. No other consents or approvals are necessary or required for the Debtor to carry out the Proposed Sale and effectuate the APA and the related actions contemplated or set forth therein.

5.      This Order shall be binding in all respects on the Debtor, its estate, all creditors, all holders of equity interests in the Debtor, all holders of any Interests or Claims (whether known or unknown) against the Debtor, any holders of Interests or Claims against or on all or any portion of the Sale Assets, all counterparties to any executory contract or unexpired lease of the Debtor, McFarlin and all successors and assigns of McFarlin, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in the Debtor's Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case.

6.      The terms and provisions of the APA and this Order shall inure to the benefit of the Debtor's estate, the Debtor's creditors, and the Debtor and McFarlin and their respective Affiliates, successors and assigns, and any other affected third parties, including all persons asserting any Interests or Claims in the Sale Assets to be sold to McFarlin pursuant to the APA, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under

any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise shall be binding. The provisions of this Order and the terms and provisions of the APA, and any actions taken pursuant hereto or thereto shall survive the entry of any order that may be entered confirming or consummating any plan of the Debtor or converting the Debtor's case from chapter 11 to chapter 7.

7.     Pursuant to Bankruptcy Code sections 105(a), 363(b), 363(f), 365(b) and 365(f), subject to the terms and conditions of this Order and consummation of the Closing, the Debtor's transfer of the Sale Assets pursuant to the APA shall vest McFarlin or its assigns with all of the Debtor's right, title, and interest in and to the Sale Assets free and clear of liens, claims, encumbrances, defenses, and interests (other than the Assumed Liabilities and any other obligations imposed by the APA), in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including without limitation: (i) mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, subleases, leases, condition sale arrangements, or any similar rights; (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including, without limitation, all rights or causes of action (whether in law or equity), proceedings,

warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtor or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, and labor, employment and pension claims; (iv) any rights based on any successor or transferee liability; (v) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtor's or McFarlin's interest in the Sale Assets, or any similar rights; (vi) any rights under labor or employment agreements; (vii) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (viii) any other employee claims related to worker's compensation, occupation, disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act,

each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including without limitation the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§ 2101, et seq.); (ix) any bulk sales or similar law; (x) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing; (xi) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not a Designated Contract; and (xii) any other Excluded Liabilities under the APA (collectively, the "Interests or Claims"), with all such Interests or Claims to attach to the proceeds of the Proposed Sale in the order of their priority, with the same validity, force, and effect that they have immediately prior to the consummation of the Closing as against the Sale Assets, subject to any claims and defenses the Debtor may possess with respect thereto. Furthermore, except as otherwise provided in the APA, McFarlin and/or its Affiliates, assigns, designees, or successors shall not have any liabilities for the prepetition or pre-Closing Date conduct of the Debtor or any of its officers, directors, employees, or agents.

8. Notwithstanding any provisions set forth herein, any outstanding ad valorem taxes, including the 2020 taxes, owed to Harris County Improvement District #6 and the Harris County Tax Office (together the "Taxing Authorities") in relation to the Sale Assets, including statutory interest at the applicable non-bankruptcy rate as provided under Texas law (the "Unpaid Taxes"),

shall be paid at the time of Closing. The Taxing Authorities shall retain their Liens against the Sale Assets until the Unpaid Taxes are paid in full. The tax liens for the 2021 taxes are specifically retained by Texas Taxing Authorities until the 2021 taxes are paid in full, when due, and the Purchaser assumes the personal liability for such 2021 taxes.

9.     The Debtor will not close the sale unless an agreement is signed and in place with a qualified management company at close and the CRO is satisfied, along with our PCO, that the sale and its transition will not be harmful to the residents

10.     In addition, the employees working on site at the Debtor's property will be retained on payroll through and including January 18, 2020, unless hired at an earlier date by McFarlin, its successors, or assigns.

11.     Upon consummation of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Sale Assets or a bill of sale transferring good and marketable title in such Sale Assets to McFarlin pursuant to the terms and allocations set forth in the APA. For the avoidance of doubt, the Excluded Assets set forth in the APA are not included in the Sale Assets.

12.     Subject to the terms and conditions of this Order, the transfer of Sale Assets to McFarlin pursuant to the APA and the consummation of the Proposed Sale and any related actions contemplated thereby (x) do not require any consents other than as specifically provided for in the APA, and (y) will, upon consummation of the Closing, constitute a legal, valid, and effective transfer of the Sale Assets.

13.     To the greatest extent available under applicable law and except as provided in the APA, McFarlin, as provided by the APA, shall be authorized, upon consummation of the

Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Sale Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to McFarlin upon consummation of the Closing as provided by the APA. To the extent provided by Bankruptcy Code section 525, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Sale Assets sold, transferred, assigned, or conveyed to McFarlin on account of the filing or pendency of this Chapter 11 Case or the consummation of the Proposed Sale.

14.     At the Closing of the transactions contemplated by the APA, McFarlin is hereby authorized in connection with the consummation of the Sale to allocate the applicable Sale Assets, among its Affiliates, agents, designees, assigns, and/or successors, in a manner as McFarlin, in its sole discretion, deems appropriate, and to allocate, assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Sale Assets, to its Affiliates, agents, designees, assignees and/or successors, with all of the rights and protections afforded to McFarlin under this Sale Order and the APA with respect thereto, and the Debtor shall cooperate with and take all actions reasonably requested by McFarlin to effectuate any of the foregoing.

15.     This Sale Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to the Sale Assets. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including, without limitation, recordation of this Order.

16. All entities that are presently, or immediately prior to the consummation of the Closing may be, in possession of the Sale Assets to be sold, transferred, or conveyed (wherever located) to McFarlin pursuant to the APA are hereby directed to surrender possession of the Sale Assets to McFarlin upon consummation of the Closing.

17. Upon consummation of the Closing set forth in the APA, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests or Claims against or in the Sale Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Sale Assets (unless otherwise assumed in the APA), or otherwise, then: McFarlin is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Sale Assets of any kind or nature (except as otherwise assumed in the APA). Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Proposed Sale and related transactions.

18. Effective as of the Closing Date, McFarlin (and any designees, assigns, and/or successors of McFarlin's rights under the APA) and its respective owners, members,

shareholders, managers, directors, officers, partners, employees, Affiliates, agents, attorneys, investment bankers and financial advisors are hereby generally released by the Debtor, its Affiliates, its estate and its owners, members, shareholders, managers, directors, officers, partners, employees, agents, attorneys, investment bankers and financial advisors from any and all claims that the Debtor and its Affiliates or estate or any party claiming derivatively through the Debtor may have against McFarlin, other than claims against McFarlin arising under the APA or as otherwise provided in this Sale Order.

19.   Effective as of the Closing Date, the Debtor, its estate, and its owners, members, shareholders, managers, directors, officers, partners, employees, Affiliates, agents, attorneys, investment bankers and financial advisors are hereby generally released by McFarlin and its Affiliates and their respective owners, members, shareholders, managers, directors, officers, partners, employees, agents, attorneys, investment bankers and financial advisors from any and all claims that McFarlin and its Affiliates may have against the Debtor, the Debtor's Affiliates and estate, other than claims against the Debtor, its Affiliates and estate arising under the APA or as otherwise provided in this Order (which excepted claims include, for the avoidance of doubt, the amount of McFarlin's remaining unsecured deficiency claim against the Debtor, its estate or the Debtor's Affiliates).

20.   As of and after the consummation of the Closing: (a) each of the Debtor's creditors is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release their Claims or Interests in the Sale Assets (if any) as such Claims or Interests may have been recorded or may otherwise exist; and (b) any Sale Asset that may be subject to a statutory or mechanic's lien shall be turned over to McFarlin and such liens shall

attach to the sale proceeds in the same priority they currently enjoy with respect to the Sale Assets, unless otherwise specifically provided in the APA.

21. The consummation of the Proposed Sale will not, and will not be deemed to, release, waive, compromise, modify, or otherwise affect in any manner whatsoever any Interests or Claims of any person or entity in, under, to, or against any assets or properties of the Debtor (including, without limitation, any Excluded Assets) that are not Sale Assets.

22. If, after Closing, the Debtor, the Manager, or any other party receives or collects any amounts that constitute Sale Assets or the proceeds thereof, including, without limitation, with respect to any accounts receivable included in the Sale Assets, such payments will be held in trust for the benefit of McFarlin by the Debtor, Manager, or other party, and such party will not have any rights with respect thereto, and the Debtor, Manager, or other party, as applicable, shall promptly pay over such received payment to McFarlin. For the avoidance of doubt, any amounts received or collected that constitute Sale Assets or the proceeds thereof shall not become property of the estate as contemplated by Bankruptcy Code section 541 by virtue of such receipt or collection, and no liens shall attach to such amounts constituting Sale Assets by virtue of such receipt or collection.

23. McFarlin shall not be liable for any claims against the Debtor, and the Debtor shall not be liable for any claims against McFarlin, in each case, other than as expressly provided for in the APA. McFarlin shall have no successor liability whatsoever with respect to any Claims or Interests or claims of any nature that may exist against the Debtor. Without limiting the foregoing, McFarlin shall not be, or be deemed to be, pursuant to any theory of law or equity: (i) a successor in interest or within the meaning of any law, including any revenue, successor

liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, warranty, product line, de facto merger, mere continuation, or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtor or the Manager, and McFarlin shall have no obligation to pay the wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtor or its Manager, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, in each case (y) whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent and (z) except as expressly set forth in the APA.

24.     Time is of the essence in consummating the Proposed Sale. In order to maximize the value of the Sale Assets, it is essential that the sale and assignment of the Sale Assets occur within the time constraints set forth in the APA.

25.     The automatic stay provisions of Bankruptcy Code section 362 are modified to the extent necessary to implement the terms and conditions of the APA and the provisions of this Order.

26.     Effective upon the consummation of the Closing and except as otherwise provided in this Order or the APA, all entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against McFarlin, its Affiliates, designees, successors, and assigns, or the Sale Assets, with respect to any: (a) Interests or Claims arising under, out of, in connection with, or in any way relating to the Debtor, the Sale Assets, or the operation of the Debtor's business or the Sale Assets prior to the consummation of

the Proposed Sale; or (b) successor liability by virtue of the consummation of the Proposed Sale contemplated by the Closing (except to the extent McFarlin assumed any such liability pursuant to the APA), including the following actions: (i) commencing or continuing in any manner any action or other proceeding against McFarlin, its Affiliates, successors, designees, assigns, assets, or properties, including with respect to the Interests or Claims; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against McFarlin, its Affiliates, successors, designees, assigns, assets, or properties; (iii) creating, perfecting, or enforcing any Interests or Claims against McFarlin, its Affiliates, successors, designees, assigns, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due McFarlin, its designees, its successors, or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating, or failing or refusing to issue or renew any license, permit, or authorization to operate any of the Sale Assets or conduct any business operated with the Sale Assets.

27. The Proposed Sale may include the transfer of "personally identifiable information" within the meaning of Bankruptcy Code section 101(41A).

28. Following the Closing, no holder of a Claim or Interest in or against the Debtor or the Sale Assets shall interfere with McFarlin's title to or use and enjoyment of the Sale Assets based on or related to such Claim or Interest or any actions that the Debtor may take in this Chapter 11 Case or any successor case.

29.     The Debtor, including its respective officers, employees, and agents, is hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the APA and this Order. The Debtor shall be, and they hereby is, authorized to take all such actions as may be necessary to effectuate the terms of this Order.

30.     The Proposed Sale contemplated by the APA, and entry into the APA, is undertaken by McFarlin without collusion and in good faith, as that term is defined in Bankruptcy Code section 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Proposed Sale shall not affect the validity of the Proposed Sale (including the assumption and assignment of the Designated Contracts by McFarlin, and the Proposed Sale free and clear of all Interests or Claims in the Sale Assets (unless otherwise assumed in the APA)), unless such authorization and consummation of such Proposed Sale are duly stayed pending such appeal. McFarlin is a good-faith buyer within the meaning of Bankruptcy Code section 363(m) and, as such, is entitled to the full protections of Bankruptcy Code section 363(m).

31.     As a good-faith purchaser of the Sale Assets, McFarlin has not colluded with any other parties interested in the Sale Assets, and therefore neither the Debtor nor the Debtor's estates nor any other party in interest shall be entitled to bring an action against McFarlin or any if its Affiliates, assigns, designees, or successors, and the sale of the Sale Assets may not be avoided pursuant to Bankruptcy Code section 363(n).

32.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in this Chapter 11 Case, any subsequent chapter 7 or chapter 11 case of the

Debtor, or any related proceeding subsequent to entry of this Order, shall directly conflict with or directly derogate from the provisions of the APA or the terms of this Order.

33. The failure specifically to include any particular provisions of the APA, including any of the documents, agreements, or instruments executed in connection therewith, in this Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the APA and each document, agreement or instrument be authorized and approved in its entirety.

34. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35. To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

36. The APA and any agreements, documents, or other instruments related to the APA may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court; provided, however, that any such modification, amendment, or supplement shall not modify the Purchase Price or any terms or provisions pertaining to the payment thereof or otherwise have a material adverse effect on the Debtor's estate unless approved by order of the Court after notice and a hearing.

37. McFarlin is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, and any issues related to or otherwise connected to the Proposed Sale or the APA.

38.     Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

39.     The provisions of this Order are nonseverable and mutually dependent.

40.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective immediately upon entry, and the Debtor and McFarlin are authorized to consummate the Proposed Sale immediately upon entry of this Order, in accordance with the APA.

41.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

42.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to McFarlin, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the APA or the Proposed Sale.

### ### END OF ORDER ###

Order submitted  by:


*/s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Seth A. Sloan
State Bar No. 24098437
**CROWE & DUNLEVY, P.C.**
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile:  214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: crissie.stephenson@crowedunlevy.com
E-mail: seth.sloan@crowedunlevy.com

**COUNSEL FOR THE DEBTOR**